**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CRIMINAL NO. 24-440** |
| **DEON HANTON** | : | |

## GOVERNMENT'S SENTENCING MEMORANDUM

Defendant Deon Hanton, a four-time convicted felon with a history of violence, armed himself with a loaded firearm and engaged in a lucrative drug trafficking business while on state parole. He has spent most of his adult life in prison and has shown time and again that he has no regard for the law. For these reasons, as well as for the reasons provided below, the government recommends a sentence of incarceration within the advisory guideline range, absent any basis for a below-guideline sentence addressed in the supplemental sealed attachment to this sentencing memorandum**.**

A sentencing court follows a two-step process, first calculating the range under the Sentencing Guidelines, and then considering that range along with all pertinent 18 U.S.C. § 3553(a) factors in determining the appropriate sentence. *See* USSG § 1B1.1 (Nov. 1, 2025).[1] In calculating the guideline range, this Court must make findings pertinent to the guideline calculation by applying the preponderance of the evidence standard. *United States v. Grier*, 475

[1] Courts previously followed a three-step process, in which the court first calculated the guideline range, then next ruled on motions for departure, before considering the 3553(a) factors. *See United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006). In an extensive amendment to the Guidelines effective November 1, 2025, the Sentencing Commission eliminated the departure provisions in the manual and dictated the two-step process described above.

F.3d 556 (3d Cir. 2007) (en banc). The failure to properly calculate the advisory guideline range will rarely be harmless error. *United States v. Langford*, 516 F.3d 205, 214-18 (3d Cir. 2008).

At the second step of the sentencing process, "[t]he record must demonstrate the trial court gave meaningful consideration to the § 3553(a) factors. . . . [A] rote statement of the § 3553(a) factors should not suffice if at sentencing either the defendant or the prosecution properly raises 'a ground of recognized legal merit (provided it has a factual basis)' and the court fails to address it." *United States v. Cooper*, 437 F.3d 324, 329-30 (3d Cir. 2006) (citations omitted). *See also Rita v. United States*, 551 U.S. 338, 356 (2007) ("The sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority."); *United States v. Flores-Mejia*, 759 F.3d 253, 256 (3d Cir. 2014) (en banc) ("Failure to give 'meaningful consideration' to any such argument renders a sentence procedurally unreasonable which, when appealed, generally requires a remand for resentencing.").

The government explains below its view of the proper consideration in this case of the advisory guideline range and of the Section 3553(a) factors.

## I. **BACKGROUND**

On December 12, 2024, a federal grand jury in the Eastern District of Pennsylvania returned a three-count Indictment charging the defendant with possession with the intent to distribute less than 50 kilograms of marijuana, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(D) (Count One), possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count Two), and possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1).

On June 10, 2026, the defendant was found guilty of all counts of the Indictment following a three-day jury trial before the Honorable Kai N. Scott. Sentencing is currently scheduled for September 22, 2026.

## II. SENTENCING CALCULATION

### A. Statutory Maximum And Mandatory Minimum Sentence

*21 U.S.C. § 841(a)(1), 841(b)(1)(D) (possession with intent to distribute less than 50 kilograms of marijuana)(Count One)*

The maximum sentence is five years' imprisonment, $250,000 fine, two years of supervised release, and a $100 special assessment.

*18 U.S.C. § 924(c)(1)(A) Possession of a Firearm During a Drug Trafficking Crime (Count Two)*

The statutory maximum sentence is life imprisonment, a mandatory minimum five years' imprisonment consecutive to any other sentence imposed, a five-year period of supervised release, a $250,000 fine, and a $100 special assessment.

*18 U.S.C. § 922(g)(1) Felon in Possession of a Firearm (Count Three)*

The statutory maximum sentence is 15 years' imprisonment, three years of supervised release, a $250,000 fine, and a $100 special assessment.

**Total Maximum Sentence**: Life imprisonment, a mandatory minimum five years' imprisonment consecutive to any other sentence of imprisonment imposed, up to five years of supervised release, a $750,000 fine, and a $300 special assessment.

**B. <u>Sentencing Guidelines Calculation</u>.**

The Probation Office correctly calculated the defendant's advisory guideline range as 360 months to life imprisonment. Presentence Report (PSR) ¶ 90. The probation department's calculations are based on the following:

> Based upon an offense level of 24 and a criminal history category of VI, the guideline imprisonment range is 100 months to 125 months. Count Two requires a 60-month term of imprisonment, which shall be imposed consecutively to any other term of imprisonment, pursuant to 18 U.S.C. § 924 (c)(1)(D)(ii). Therefore, the effective guideline imprisonment range is 160 months to 185 months. However, the guideline range shall be the greater of the guideline range that results by adding the mandatory minimum consecutive penalty required by 18 U.S.C. § 924 (c) count to the minimum and maximum of the otherwise applicable guideline range determined for the counts of conviction or the guideline range determined using the table in USSG § 4B1.1(c)(3). In this case, the USSG § 4B1.1(c)(3) range is greater as the defendant received no reduction under USSG § 3E1.1; therefore, the guideline range of imprisonment is 360 months to life.

*Id.*

## III. ANALYSIS

The Supreme Court has declared: "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). "These requirements mean that '[i]n the usual sentencing, . . . the judge will use the Guidelines range as the starting point in the analysis and impose a sentence within the range." *Peugh v. United States*, 569 U.S. 530, 542 (2013) (quoting *Freeman v. United States*, 564 U.S. 522, 529 (2011) (plurality opinion); ellipsis in original). "Common sense indicates that in general, this system will steer district courts to more within-Guidelines sentences." *Peugh*, 569 U.S. at 543. "The federal system adopts procedural measures intended to make the Guidelines the lodestone of sentencing." *Id.* at 544.

In addition, this Court must also consider all of the sentencing considerations set forth in Section 3553(a). Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a). [2]

**A. Consideration of the 3553(a) Factors Regarding Imprisonment.**

**The Nature and Circumstances of the Offense**
**The History and Characteristics of the Defendant**

At 35 years old, the defendant is a veteran of the criminal justice system. The defendant stands before this court having spent a large portion of his adult life incarcerated for the same offenses a federal jury found him guilty of in the instant matter. The defendant has remained

[2] Further, the "parsimony provision" of Section 3553(a) states that "[t]he court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." The Third Circuit has held that "district judges are not required by the parsimony provision to routinely state that the sentence imposed is the minimum sentence necessary to achieve the purposes set forth in § 3553(a)(2). . . . '[W]e do not think that the "not greater than necessary" language requires as a general matter that a judge, having explained why a sentence has been chosen, also explain why some lighter sentence is inadequate.'" *United States v. Dragon*, 471 F.3d 501, 506 (3d Cir. 2006) (*quoting United States v. Navedo Concepcion*, 450 F.3d 54, 58 (1st Cir. 2006)).

dedicated to trafficking narcotics and violent crime for almost two decades, fueled by greed and undeterred by lengthy prison sentences and repeated violations of probation and parole.

The defendant was arrested on September 14, 2009, in the area of 600 N. Union Street. PSR ¶ 35. In that matter (CP 51 CR 0001057-2010), police officers observed the defendant make a hand-to-hand transaction with another male. When the officers attempted to stop the defendant, he fled from police, discarding a clear plastic bag filled with packets of crack cocaine on the highway. After the officers apprehended the defendant, they recovered $646 dollars in small denominations from his person. While on pretrial release for that case, the defendant was next arrested on April 8, 2010 (CP 51 CR 0008489-2010). PSR ¶¶ 37 – 38. On that date, the defendant was observed at the intersection of Union Street and Melon Street in Philadelphia engaged in multiple sales of crack cocaine. On February 9, 2011, the defendant was sentenced in both of the above-mentioned cases to four years' probation. PSR ¶¶ 35, 37.

Just five months later, while still serving those probation sentences, the defendant was arrested on July 7, 2011 (CP 51 CR 0009933-2011) for aggravated assault (F1), possession of a firearm by a prohibited person (F2), and violations of the Uniform Firearms Act. PSR ¶ 39. These charges stemmed from the defendant demanding the victim's belongings and shooting the victim once in the leg. PSR ¶ 40 The defendant then continued to fire his weapon as the victim ran away. *Id.* When officers attempted to arrest the defendant two days after the shooting, they observed him in the area of 600 N. Union Street. The defendant fled from police into an alleyway, entering a home on the block occupied by a female relative before officers were able to place the defendant into custody. In that case, the defendant was convicted after a jury trial and sentenced on December 19, 2013, to five to ten years' incarceration. He was also sentenced the same day to a consecutive period of one to two years' incarceration for violations of

probation/parole.

While on state parole for the above referenced cases, the defendant was arrested on April 24, 2019, for possession with the intent to deliver crack cocaine in the area of 600 Union Street, Philadelphia, PA (CP 51 CR 0003983-2019). PSR ¶¶ 41-42. The defendant was sentenced to 21 months to 42 months of imprisonment and was paroled on January 5, 2023. PSR ¶ 41.

Once again, while on state parole, the defendant remained steadfast in his allegiance to the drug trade. Rather than resolving to turn his life around, the defendant simply changed his business plan. While the defendant's previous arrests occurred while he was on the streets of Philadelphia (primarily Union Street), the defendant attempted insulate himself from detection by law enforcement by renting an apartment in someone else's name, arming himself with a firearm, and operating out of the "trap." In the defendant's own words, "This is what I do all day. I sit here bro. I do what the f*ck I gotta do. This my Union Street. This is my new Union. And I do what the f*ck I gotta do. I sit here all day, handle f*cking business and go home at night." Government Trial Exhibit 107A.

During the trial, the Court and a jury of the defendant's peers witnessed the defendant brazenly "handle f*cking business" while on a monitored video call with Pennsylvania Department of Corrections inmates, all while keeping a loaded firearm within arm's reach. The government anticipates that the defendant will argue for a mitigated sentence, in part due to the type of drug the defendant chose to traffic. Yet the loaded firearm, with one bullet in the chamber that defendant "kept close by," was just as real and just as dangerous as when he previously shot a victim on the streets of Philadelphia. The defendant's business plan may have switched from crack cocaine on Union Street to bulk marijuana in an apartment off of City Line Avenue, but he remains as much of a threat as ever to a city already plagued by narcotics sales

and related gun violence.

**The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense**

The defendant's history supports the need for significant incarceration. He has been convicted of numerous felonies, including aggravated assault and multiple convictions for drug trafficking. He has spent much of his adult life in prison. It is clear that the recommended term of imprisonment is required "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." § 3553(a)(2).

**The Need to Afford Adequate Deterrence to Criminal Conduct, and to Protect the Public from Further Crimes of the Defendant**

It is difficult to conceive of a person less deterred than this defendant. Despite serving sentences for a multitude of felonies and violations of probation and parole, the defendant boldly continued to break the law while on recorded video calls – all while on state parole. The recommended sentence of incarceration affords adequate deterrence to others who would commit a similar offense, and protects the public from further crimes of the defendant, for at least as long as he remains incarcerated. *Id.*

**The Need to Provide the Defendant with Educational or Vocational Training, Medical Care, or Other Correctional Treatment in the Most Effective Manner**

There is no need in this case to adjust the sentence in order "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . ." § 3553(a)(2)(D). The government is not aware of any unique issues regarding education or vocational training relating to this defendant. However, to the extent that the defendant wishes to better himself through training and education, the

recommended term of incarceration will not inhibit those efforts while he is in the custody of the Bureau of Prisons or while on supervised release.

**The Need to Avoid Unwarranted Sentence Disparities Among Defendants with Similar Records Who Have Been Found Guilty of Similar Conduct**

Adherence to the recommended guideline range assures that the defendant's sentence is consistent with those imposed nationwide on similarly situated offenders, and thus complying with Section 3553(a)(6) and avoiding undue disparity

**The Need to Provide Restitution to Any Victims of the Offense**

Restitution is not an issue in this case. § 3553(a)(7).

Therefore, in sum, all of the appropriate considerations of sentencing favor the imposition in this case of a within-guideline sentence. As noted, the Sentencing Guidelines present "the lodestone of sentencing," *Peugh*, 569 U.S. at 544, and that guide is once again persuasive in this case.

**B. The Continued Importance of the Sentencing Guidelines.**

It is notable that a sentence within or near the guideline range properly reflects the accumulated wisdom and expertise of the Sentencing Commission, and serves the vital goal of uniformity and fairness in sentencing. While, to be sure, "[i]n accord with 18 U.S.C. § 3553(a), the Guidelines, formerly mandatory, now serve as one factor among several courts must consider in determining an appropriate sentence," *Kimbrough v. United States*, 552 U.S. 85, 90 (2007), it remains the case that "the Commission fills an important institutional role: It has the capacity

courts lack to 'base its determinations on empirical data and national experience, guided by a professional staff with appropriate expertise,'" *id.* at 108-09 (citation omitted).

Thus, the Supreme Court stated: "We have accordingly recognized that, in the ordinary case, the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." *Kimbrough*, 552 U.S. at 109 (quoting *Rita v. United States*, 551 U.S. 338, 350 (2007)).

In *Rita*, the Supreme Court held that an appellate court may presume that a within-guideline sentence is reasonable. While this presumption does not apply before the district court, *Rita*, 551 U.S. at 351, the Supreme Court's observation is informative that "the presumption reflects the fact that, by the time an appeals court is considering a within-Guidelines sentence on review, *both* the sentencing judge and the Sentencing Commission will have reached the *same* conclusion as to the proper sentence in the particular case. That double determination significantly increases the likelihood that the sentence is a reasonable one." *Id.* at 347 (emphasis in original).

Further, the advisory guidelines are the sole means available for assuring some measure of uniformity in sentencing, fulfilling a key Congressional goal in adopting the Sentencing Reform Act of 1984. Reference to the Guidelines, while carefully considering the 3553(a) factors particularly relevant to an individual defendant, is the only available means of preventing the disfavored result of basing sentences on the luck of the draw in judicial assignments. The Third Circuit explained:

> Even under the current advisory system, district courts must "meaningfully consider" § 3553(a)(4), i.e., "the applicable category of offense . . . as set forth in the guidelines." The section of *Booker* that makes the Guidelines advisory explains that "the remaining system, while not the system Congress enacted, nonetheless continue[s] to move sentencing in Congress' preferred direction, *helping to avoid excessive sentencing*

> *disparities while maintaining flexibility sufficient to individualize sentences where necessary." Booker*, 543 U.S. at 264-65 (emphasis added). The Guidelines remain at the center of this effort to "avoid excessive sentencing disparities," and, as the *Booker* Court explained, the Sentencing Commission will continue "to promote uniformity in the sentencing process" through the Guidelines. *Id.* at 263. We have likewise observed that the "'Guidelines remain an essential tool in creating a fair and uniform sentencing regime across the country.'" *Cooper*, 437 F.3d at 331 (quoting *United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005)).

*United States v. Ricks*, 494 F.3d 394, 400 (3d Cir. 2007) (emphasis in original). Therefore, the Supreme Court has held that "district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process." *Gall*, 552 U.S. at 50 n.6. *See also United States v. Langford*, 516 F.3d 205, 211-13 (3d Cir. 2008) (explaining at length the continued importance of the guidelines).

For all of these reasons, the advisory guideline range deserves significant respect. To be clear, the government recognizes that the guidelines are entirely advisory, and that a district court has discretion to vary from an advisory range, subject only to deferential appellate review for reasonableness. However, our point is that a district court must consider the guideline range, *see* § 3553(a)(4), and is usually well advised to follow the Sentencing Commission's advice, in order to assure fair, proportionate, and uniform sentencing of criminal offenders. Moreover, as explained in detail earlier, there are no other 3553(a) factors in this particular case which militate against imposition of a sentence within that range; to the contrary, the 3553(a) factors on balance support the imposition of the recommended guideline punishment.

**C. <u>Supervised Release</u>.**

Pursuant to Sections 5D1.1 and 5D1.2 of the Sentencing Guidelines, as amended effective November 1, 2025, the Court is directed to conduct an "individualized assessment" when deciding whether to impose a term of supervised release, and if supervised release is

imposed, how long the term should be. The Court is further directed to state in open court its reasons for imposing or not imposing a term of supervised release, and its reasons for the length of a term imposed. Further, Section 5D1.3 sets forth mandatory conditions of a term of supervised release, and "discretionary conditions" that the Court may impose, following the same individualized assessment.

The guideline commentary, consistent with 18 U.S.C. § 3583(c), provides that the "individualized assessment" should rest on consideration of the same sentencing factors under 18 U.S.C. § 3553(a) that are considered with respect to a term of imprisonment, with the exception of Sections 3553(a)(2)(A) (the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense") and 3553(a)(3) ("the kinds of sentences available"), which do not apply with regard to supervised release decisions.

In this case, a term of supervised release of at least five years is warranted. As explained above, the defendant presents a lengthy record of criminal conduct, involving violence. Close supervision following release from imprisonment is warranted to aid his reentry to society and to protect the public. A term of supervised release in this case advances the goals of sentencing to deter criminal conduct, § 3553(a)(2)(B), protect the public, § 3553(a)(2)(C), assure that the defendant continues to pursue education and vocational efforts that promote rehabilitation, § 3553(a)(2)(D), and pays restitution to victims, § 3553(a)(7). Further, the Sentencing Commission recognizes that "the more serious the defendant's criminal history, the greater the need for supervised release." § 5D1.1 app. note 2.

## IV. CONCLUSION

For these reasons and subject to any that may be presented at the defendant's sentencing hearing and in the Sealed Supplement, the government believes that a sentence within the advisory guideline range fully accounts for the scope and severity of the defendant's criminal conduct is appropriate in this case.

Respectfully submitted,

DAVID METCALF
United States Attorney

*/s Branwen O'Donnell*
BRANWEN O'DONNELL
Assistant United States Attorney
SHANNON ZABEL
Special Assistant United States Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that this Sentencing Memorandum has been served on the Filing User identified below through the Electronic Case Filing (ECF) system:

Susan M. Lin
Kairys, Rudovsky, Messing, Feinberg & Lin LLP
The Cast Iron Building
718 Arch Street, Suite 501 South
Philadelphia, PA 19106
slin@krlawphila.com

*/s Branwen O'Donnell*
BRANWEN O'DONNELL
Assistant United States Attorney
SHANNON ZABEL
Special Assistant United States Attorney

DATED: October 20, 2026.